Christian, J.
This is a supersedeas to a judgment of the Circuit court of Augusta county.
It was an action of covenant brought upon a contract under seal in the following words :
§5,000. Two years after date, for value received, we promise and bind ourselves jointly and severally, to pay to Simon H. Hilb, his heirs and assignees, the sum of five thousand dollars, without interest, and in such funds as the banks receive and pay out. Witness our hands and seals, &c.
Signed, J. B. Peyton, [Seal.]
Wm. H. Peyton, (Sec.,) [Seal.]
Geo. L. Peyton, “ [Seal.]
Thos. H. Peyton, [Seal.]
Bated June 9th, 1868.
The defendants pleaded “ covenants performed,” and gave notice that they should insist that the debt should be scaled under the adjustment act.
The plaintiff, to sustain the issue on his part, produced the obligation sued upon, and then proved that at the the maturity of said obligation, to wit: on the 9th day of June 1865, the funds received and paid out by the banks were greenbacks and National bank notes, which were at that time worth', as compared with gold, from §135 to §145 of currency to §100 of gold. The plaintiff there rested his case. The defendants, on their part, proved that the bond in controversy was given fora loan of §5,000 in Confederate States treasury notes, and there rested their case. And, thereupon, the plaintiff) Hilb, was introduced and examined, to prove the true understanding and agreement of the parties in respect to the kind of currency in which the contract was to be performed. He proved that he was engaged in business in Staunton, and was not a money lender: that when applied to by one of the defendants for a loan of money, he declined; but that upon a second application, he agreed to make the loan upon the terms stated in the bond. *388 And that in accepting these terms, he expected to receive at the maturity of the bond, a better currency than that which he loaned.
The defendants then introduced J. B. Peyton, one of the defendants, who proved that ho was the principal in the bond ; and was the party with whom the negotiations were had. He confirmed the evidence of the plaintiff as to his refusal, at first, to make the loan, and his subsequent agreement to loan on the terms stated in the bond. Tins witness proved that he regarded the contract to some extent as a contract of hazard ; that he had faith in the Confederate cause ; that wheu he made the contract he expected to discharge it in Confederate treasury notes ; and that the hazard of the contract was the appreciation or depreciation of that currency. He also proved that he wrote the bond upon "which this action was brought.
ffm. H. Peyton, another of the defendants, also proved the unwillingness of the plaintiff to loan the Confederate treasury notes at first, but his subsequent agreement to do so upon the terms set forth in the bond. This ■witness also proved that the verbal understanding between the parties prior to the loan, was correctly expressed in the bond. The defendants also introduced the scale of depreciation of Confederate treasury notes, showing that at the date of the bond they were worth from 7J to 8 lor one in gold. These were all the facts proved as certified by the court below. Upon these facts the jury found a verdict for the plaintiff, and assessed his damages at $625 in gold, with interest from the 9th of June 1868, till paid : the jury having scaled the debt according to the scale of depreciation of Confederate treasury notes. A motion was made by the plaintiff, to set aside the verdict and grant a new trial; which was overruled by the court; and a judgment entered for the amount found by the jury. A writ of error and supersedeas to that judgment brings up the case to this court.
The case presents, here as it did to the court below, a *389 single question, and that is, what is the legal construction and legal effect of the contract which the parties entered into, reduced to writing, signed and sealed for - themselves? That writing, and that alone, must be looked to as containing the true understanding and agreement of the parties. Clearly, and beyond all question, that writing bound the obligors to pay five thousand dollars, without interest, in such currency as the banks should receive and pay out at its maturity, to wit: on the 9th day of June 1865. The only parol evidence necessary or proper to be introduced, to fix the measure of their liability, was, in reference to the kind of currency received and paid out by the banks two years after the date of the obligation. If, at the maturity of the bond, the banks were receiving Confederate treasury notes, then it was solvable in that currency ; if the banks were receiving and paying out gold and silver, then it was solvable in gold and silver; and if they were receiving and paying out national currency and greenbacks, then the obligation was solvable in that currency. This is the plain and unmistakable meaning of the terms employed by the parties, and the plain, legal effect of their obligation. It is difficult to conceive what form of words could have been employed, more- plainly to express their meaning, than those which have been written and signed by the parties.
The words used import their own meaning, the language employed furnishes its owii construction, so plain to any mind as to admit of no controversy ; indeed, so plain that every argument advanced by the learned counsel for the defendant in error here, might have been fully answered by simply reading the bond. It was not a case in which parol evidence was admissible, and if objected to it ought to have been excluded. The learned counsel for the defendants in error, invokes the aid of the statute known as the “ adjustment act,” to justify the admission of parol evidence in such a case as this, *390 and indeed iu all other cases where the contract, no matter what may be its terms, is made between the 1st of January 1862 and the 10th of April 1865. I cannot assent to this broad and unlimited construction. It is not warranted either by the letter or the spirit of the statute. The section relied upon is in these words: “ In any action or suit or other proceeding for the enforcement of any contract, express or implied, made and entered into between 'the 1st day of January 1862, and the 10th day of April 1865, it shall be lawful for either party to show by parol or other relevant evidence, what was the true understanding and agreement of the parties, either expressed or to be implied, in respect to the kind of currency in which the same was to be fulfilled or performed, or with reference to which, as a standard of value, it was made and entered into.” &c. blow, by the very terms of this section, the parol evidence to be admitted under it, is confined and limited to the hind of currency in which the contract is to be fulfilled or performed. Where the parties themselves have stipulated in writing as to the hind of currency in which the obligation is to be fulfilled or performed, then this section clearly does not apply. It is only in a case where the parties have not stipulated plainly and unmistakably as to the kind of currency in which the obligation is- solvable, that parol evidence can be heard. The statute became necessary because of the use, in contracts during the -war, of the word dollars, (which before had a technical and constitutional meaning,) as applied to a depreciated currency ; and when that word is employed or any other words used, which leave it in doubt lohat kind of currency was to be paid, then parol evidence may be admitted to show the true understanding and agreement of the parties, iu respect to the kind of currency in which the contract is to be fulfilled or employed. But surely, where the parties have reduced to writing their own understanding and agreement, as to the kind of cur *391 rency in which their obligation is to be performed, it would violate the plainest roles of evidence to admit parol evidence to vary, alter or contradict that written agreement.
But in this case parol evidence was offered by both plaintiff* and defendants without objection. It was considered by the jury as proper evidence in the cause. And, even regarding that evidence as admissible and proper to be heard, let us now enquire, was the jury warranted in finding the verdict which they have rendered ? This is not a case of .conflict of testimony. It is not a case dependent upon the weight and tendency of the evidence where a jury has to decide upon the credit of witnesses. There is no conflict in the statement of the plaintiff;* and defendants. Every word uttered by the plaintiff* is confirmed by the defendants. Nor is the statement of either at all in conflict with the express terms of the written obligation ; tfnt, on the contrary, both plaintiff* and defendants point to the bond (which was written by one of the defendants), as expressing the terms of their agreement. It is true the plaintiff* says that, in accepting the terms stated in the bond, he expected to receive a better currency than that which he loaned; and the defendant, who was principal in the bond, stated that he expected, while he regarded the contract to some extent a contract of hazard, to discharge it in Confederate treasury notes. Now, these respective expectations of the parties cannot weigh a feather in the scale of judicial construction. But even these are perfectly consistent with the terms of the bond, and with their own statements respecting it. It is evident that the plaintiff* expected to receive a better currency than he loaned, or he would not have loaned it without interest. The defendant, who was principal, gives the reason' why he expected to discharge the obligation in Confederate money. He says he had faith in the Confederate cause. He evidently did not expect that the *392 Confederacy would be overthrown in less than two years. His calculation was to pay in a currency still more depreciated. He knew it was rapidly depreciating every day, and the chances were it would still continue to depreciate. His calculations came very near being verified, for, if the war had lasted sixty days longer, he would then have paid in a currency depreciated at least sixty to one, a debt which he had contracted in the same currency, depreciated only to the extent of eight to one. These expectations of the parties, while they cannot weigh a feather in explaining the contract, or fixing its legal construction, indicate that with both, this contract, like that in Brackan v. Griffin, 3 Call. 375, and Boulware v. Newton, 18 Gratt. 708, was a contract of hazard, fully understood by the parties, and fairly entered into on both sides.
There is nothing in the evidence to impeach it. Both plaintiff and defendants point to the contract itself as expressing the terms of their agreement. There is no doubt or ambiguity on the face of that agreement, and it must be executed as the. parties have covenanted for themselves. There was nothing in the contract or the evidence to warrant the jury in scaling the amount of the obligation ; and the Circuit court erred in refusing to set aside the verdict and grant a new trial.
Hor can it be maintained, as was earnestly argued by the-learned counsel for the defendants in error, that the granting of a new trial in such a case as this, is at all in conflict with the well settled rules of law which govern new trials, so often established by this court, and reaffirmed in the case, Blosser v. Harshberger, decided at the present term. In the case at bar there was no conflict of testimony. It was not a case at all dependent upon the weight and tendency of the evidence, or the credit of the witnesses. But the whole case depended upon the legal construction to be given to the written contract of the parties. It was, therefore, a question of law *393 rather than a question of fact; and it should have been so considered and acted upon in the court below.
I am of opinion that the judgment be reversed, the ■ verdict of the jury set aside, and the cause remanded to the Circuit court, for a new trial to be had thei’ein, in conformity with the principles herein declared.
Anderson, J.
I do not think, as has been said, that the bond in this case could not have been expressed in plainer terms to convey the idea, that it was to be paid in such funds as were received and paid out by the banks at the maturity of the bond. It does not necessarily convey that meaning without adding the words “ at maturity,” or interpolating other words which are equivalent. I think it is upon its face, susceptible of a different construction from that which has been given to it. The bond is in these words : “ Two years after date, for value received, we promise and bind ourselves, jointly and severally, to pay to Simon H. Hilb, his heirs or assigns, the sum of $5,000, without interest, and in-such funds as the banks receive and pay out. If it had said in such funds as the banks shall then receive and pay out, or receive and pay out at maturity, the meaning-would be plain. And that may have been the- intention of the parties, but such intention is not expressed by the language without interpolating or adding the words mentioned. And to give it that construction is to make-it a contract of hazard, which the courts are not disposed to do if it is susceptible of a construction which will relieve it from that character.
I think it may be fairly construed to mean, that it was payable at that future time, iu such funds as the-banks received and paid out at the time the bond was given. If it had specified, in such funds as the banks shall then receive and pay out, it would plainly import, at maturity. On the other hand, if it had been, “ in such funds as the banks now receive and pay out,” it *394 would as plainly mean, at the date of the contract. The phraseology is not precisely this. It is not as the banks shall then receive and pay out; which imports a future time. Nor is it, as they now receive and pay out; which imports the present time. And why may you not as well interpolate the word “now” as to interpolate the words “ shall then” or add the woi’ds “at maturity?” But that intez'polation is unnecessary, in the former case, to convey the meaning. The words, “ in such funds as the banks receive and pay out,” in the present tensé, which means non), need not the interpolation of that word, or any other, to convey the meaning which I think may bo given to the clause.
It is not inconsistent with, nor does it militate against this construction, that it is payable without interest. It does not appear from the face of the bond, whether it was given for the loan of Confederate money, or for the sale of property. And it is not uncommon for purchases of property to be made on time without interest. But if we l’esort to the parol testimony, to learn that it was for the loan of Confederate treasuiy notes, that fact does not preclude the construction indicated. The contract so construed, was still a good bargain for the plaintiff. It was to put his Confederate treasury notes in good hands to be safely kept, and returned to him in value, when the war was over and things became settled ; a disposition which many who held that currency in large amounts would have readily made.
If this is a fair construction it is not a conti’act of hazard. The plaintiff lends his Confederate money, which was rapidly depreciating every day, upon the assurance of the borrower, amply secured, that he will return its then present value after two years, without interest. He might well forego the interest upon his ■Confederate treasury notes, to have their then present value secured to him for two years. The obligation is not to return it in Confederate treasury notes or Con *395 federate currency, but “ in such funds” as the banks were receiving and paying out at the date of the contract ; which may, I think, imply funds of equal value. The jury so understood the agreement. For to that effect is their verdict. And the learned judge who tried the cause and heard all the evidence, refused to interfere with the verdict; because he regarded it “just and in accordance with the true understanding and agreement of the parties.”
As I have said, the contract, so construed, is not a contract of 1. :zard. The only risk incurred was that of the borrower, on account of the fluctuations, aud rapid depreciation of the Confederate currency : and that depended upon his ability to make an immediate investment. Any loss that he might sustain by a short delay would be compensated by the abatement of interest. It could not, therefore, be said to be a contract of hazard on his part, as the presumption is, he knew how he could dispose of it before he borrowed it: and was only bound to pay back “ such funds ” as the banks were dealing in at the time he effected the loan ; that is the value of the Confederate notes at the time he received them. And the plaintiff incurred no hazard inasmuch as he was to receive the value of his money loaned.
If the language will not bear that construction, the words such funds as the banks receive and pay out, referring to the date of the contract, must be construed as meaning Confederate currency, as that was the ouly currency which the banks were then receiving and paying out. If that be the correct view, then it was simply an obligation to pay $5,000 in Confederate currency. And upon that construction, the judgment greatly exceeds the amount which the plaiutiff was entitled to receive. But I am disposed to give a construction more just aud favorable to the plaintiff*; and it seems to me that the words “ in such funds,” may be construed to imply funds of equal value. The word “such,” in its *396 common acceptation, means “like.” The funds may be alike in one respect and not in another ; but may be bank notes, or both may be Confederate currency. But they cannot be said to be altogether alike unless they are alike in value. When speaking of funds that are alike, value, it seems to me, is the most important point of resemblance. Therefore, if the dealings of the bank were in Confederate funds, the words “such funds,” might be construed to mean not only Confederate funds, but funds of equal value. If funds of very unequal value, they could not, with propriety, be said to be such funds.
Why then should not the contract receive this judicial construction % If the parol testimony is to be excluded, the face of the bond is at least as susceptible of this construction as the other. Indeed, it cannot import the intention ascribed to the parties by the plaintiffs, without the interpolation of words or the transposition of sentences ; whilst the other interpretation is according to its grammatical structure, and the obvious import of its terms. Contrary to the well established principle, that contracts of hazard are not to be encouraged, ought we to give a strained construction to this instrument in order to hold these parties to a contract of hazard, and require the-defendant to pay to the plaintiff five thousand dollars, for the consideration of only $625 which he received *
If it was clearly a contract of hazard, entered into by the parties with their eyes open, with an understanding of the risks they were incurring, and with the unquestionable purpose and intention of incurring those risks depending on contingencies, upon which it was lawful to contract, the courts have no discretion but to enforce it, however hard aud oppressively it may operate on one of the parties. Because it is not the province of the court to make or unmake contracts, but to enforce such as have been lawfully and fairly made.
The plaintiff contends, that this was a contract of *397 hazard, contingent upon the event of a war in which their country was engaged, and which required the active co-operation and united and vigorous exertions of all its citizens to bring it to a successful termination. Without inquiring whether it was lawful for these panies, whilst their fellow-citizens were imperilling their lives and fortunes in the defence of their country, and to bring the war to a successful issue, to be speculating upon its result, and to bo making contracts of wager upon its result, I have endeavored to show, that the written contract between them is, upon its face, susceptible of a different construction, and is not a contract of hazard. Does the parol evidence conflict with that construction, and show that the parties intended to make a contract of hazard ?
The parol testimony is excluded by a majority of the court. But not concurring in that opinion, I will briefly consider it. Does it show that these parties intended to make a contract of hazard, depending upon the result of the war, whether favorable or unfavorable to the Confederate States ? There is no testimony in the cause, except that of the parties, which is certified by the court. J. B. Peyton, the principal obligor, proves that he regarded the contract, to some extent as a contract of hazard ; but the hazard was the appreciation or depreciation of Confed 'rate currency. The plaintiff says he expected to receive payment in a currency better than that which he loaned. In other words, he expected an in provement in Confederate currency; otherwise, his evidence is in conflict with the defendants, and could not be considered.
Wm. Ii. Peyton, one of the defendants, says that the agreement was upon the terms set forth in the bond. So say the other witnesses. Neither of the witnesses says that the contract was made with a reference to the termination of the war, or how it would terminate, whether favorably or unfavorably. It was a contract to *398 pay in two years ; and the idea of the war terminating in the mean time, or, if it did, how it would result, and - what would be its effect upon their contract, seems not to have been thought of by either party, or to have been contemplated in their contract. And even if they intended that payment should be made in such funds as the banks were receiving and paying out at the maturity of the contract, as contended by the plaintiff’s counsel, they intended the banks which then operated in the State, or which might afterwards be created by the government- of Virginia, or of the Confederate States, and be subordinate to those governments; and which dealt in funds which' were created by, or authorized by the Confederate government, or by Virginia, as a member of the Confederacy. It was no part of their contract, and never entered their heads, that payment was to be made in such funds as was received and paid out by United States banks, or by banks which were subject to • the government of the United States, or in the currency of the United States government. I am clearly of opinion that banks of Virginia, as a member of the Confederacy, were meant. They were the only banks in Virginia, and were then receiving and paying out the same kind of currency which .the plaintiff loaned to the defendants. They were the only banks that were known to the parties. They had nothing to do with any other banks. And being good and faithful citizens of Virginia, which was then at war with the United States, they could not have -contemplated payment in United States currency ; such as was received and paid out by the United States banks—a currency which they could not have received, and paid out, at the time of this contract, without incurring the penalty of crime against their country. I conclude, therefore, that it was no part of the contract between those parties, that payment was to be made in such funds as were received and paid out by United States banks, or banks which were under the *399 power and control of the United States government, either directly or indirectly, through the government of Virginia. It is not a contract, expressed or implied, that if the war terminated favorably to the United States, before the maturity of the bond, it was to be paid in United States currency; and if it terminated favorably to the Confederate States, or if the bond matured before the termination of the war, ifc.was to be paid in Confederate States currency. Whether, if such had been the contract, it would have been lawful and valid, I deem it unnecessary to enquire, inasmuch as it was not the contract.
It is with great .diffidence and distrust of the correctness of my own views, when opposed by those of my brethren, that I have given this opinion. But, whether right or wrong, it is my opinion, and the country is entitled to it. And I have the satisfaction to know that it is in support of justice ; and in accordance with the judgment of the learned judge of the Circuit court, and with the verdict of the jury, which I think are as favorable to the plaintiff as he had any right to expect. I am, therefore, for affirming the judgment.
The other judges concurred in the opinion of Christian, J.
The judgment was as follows :
The court is of opinion, for reasons stated in writing and filed with the record, that, according to the true legal construction of the contract upon which the said action of covenant was founded, the said defendants in error bound themselves to pay to the plaintiff in error the sum of five thousand dollars, without interest, in such funds as the banks received and paid out two years after the date of the said contract, to wit: on the 9 th day of June 1865 ; and that the only evidence proper to be heard, in order to fix the measure of their liability, *400 was pi’oof of the kind of currency received and paid out by the banks on that day. And the court is further of opinion that the parties, having stipulated in writing for themselves, as to the kiud of currency in which their contract was to be fulfilled or perfi rmed, it was not competent for them to introduce parol evidence to vary or contradict their written agreement. It is, therefore, considered that the said judgment is erroneous, and that the same be reversed and annulled, and that the plaintiff in error recover against the de endauts in error his costs expended about the prosecution of his writ of supersedeas here. And it is ordered that the verdict of the jury be set aside, and the cause remanded to the said Circuit court for a new trial to be had therein, in conformity with the principles herein declared.
Judgment reversed.